# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 04-1495

CARL KIRCHER and ROBERT BROCKWAY,
individually and on behalf of a class,

*Plaintiffs-Appellees*,

v.

PUTNAM FUNDS TRUST and PUTNAM
INVESTMENT MANAGEMENT, LLC,

*Defendants-Appellants*.

_____

Appeal from the United States District Court
for the Southern District of Illinois.
No. 03-CV-0691-DRH—**David R. Herndon**, *Judge*.

_____

SUBMITTED MAY 26, 2004—DECIDED JUNE 29, 2004

_____

Before EASTERBROOK, EVANS, and WILLIAMS, *Circuit
Judges*.

EASTERBROOK, *Circuit Judge*. Plaintiffs own shares in
Putnam Funds Trust, a mutual fund regulated by the
Securities and Exchange Commission under statutes such
as the Securities Act of 1933, the Securities Exchange Act
of 1934, and the Investment Company Act of 1940. Con-
tending that the fund and its investment adviser (Putnam
Investment Management) had engaged in misconduct that
reduced the value of their shares, plaintiffs filed suit in

state court, invoking state law alone. They propose to represent a class of the Fund's investors. By forswearing reliance on federal law plaintiffs hope to avoid the strictures of federal statutes such as the Private Securities Litigation Reform Act of 1995. Similar maneuvers by other investors in the wake of the 1995 statute led Congress to enact the Securities Litigation Uniform Standards Act of 1998. This statute, usually known by its ungainly acronym SLUSA, blocks many class actions based on state law when the issuers are covered by the federal securities laws. Preemption normally is an affirmative defense, to be evaluated by the court in which the plaintiff elects to sue. See, e.g., *Franchise Tax Board of California v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983). SLUSA departs from the norm by permitting defendants to remove so that a federal court may evaluate the defense in advance of any step in the state litigation. See 15 U.S.C. §§ 77p(c), 78bb(f)(2). If the federal court determines that the claim is preempted, it dismisses the suit; otherwise it remands for proceedings under state law. 15 U.S.C. §§ 77p(b), (d)(4), 78bb(f)(1), (3)(D).

Defendants removed this suit under §77p(c). (From here on, we mention only §77p; provisions in §78bb are functionally identical.) They asked the district judge to find the action foreclosed by §77p(b), which provides:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
> > (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
> >
> > (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

The district court concluded that the proceeding is a "covered class action" because plaintiffs seek damages on behalf of more than 50 investors. (Section 77p(f)(2)(A) provides the full definition of "covered class action.") But the judge concluded that the suit is not affected by §77p(b) because plaintiffs do not allege loss "in connection with the purchase or sale" of securities; they have held throughout the class period and claim to be injured by events that diminished the value realized by all investors. The court's conclusion that §77p(b) does not thwart plaintiffs' claims required a remand under the terms of §77p(d)(4):

> In an action that has been removed from a State court pursuant to subsection (c), if the Federal court determines that the action may be maintained in State court pursuant to this subsection, the Federal court shall remand such action to such State court.

In the opinion's final paragraph, the district judge added: "Because the Court lacks subject matter jurisdiction, the Court **REMANDS** this action to the Madison County, Illinois Circuit Court." (Capitalization and boldface in original.) This sentence had led to the dispute that requires our resolution.

Because it ends the litigation in federal court, a remand is a "final decision" that may be appealed under 28 U.S.C. §1291. See *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 711-15 (1996). Defendants filed a timely notice of appeal from the district court's remand. But we must reckon with 28 U.S.C. §1447(d), which says that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." In *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336 (1976), the Court held that §1447(d) is not as sweeping as its language suggests; instead, the Justices concluded, it blocks review only when the district court acts under the authority granted by §1447(c) or an equivalent statute. See

*Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995), which recapitulates the Court's views on §1447(d).

Lack of subject-matter jurisdiction is a ground on which remand is authorized (indeed, required) by §1447(c), and accordingly a district judge's conclusion that jurisdiction is lacking is not subject to appellate review. See, e.g., *Gravitt v. Southwestern Bell Telephone Co.*, 430 U.S. 723 (1977); *Rubel v. Pfizer Inc.*, 361 F.3d 1016 (7th Cir. 2004); *Adkins v. Illinois Central R.R.*, 326 F.3d 828 (7th Cir. 2003); *Phoenix Container, L.P. v. Sokoloff*, 235 F.3d 352 (7th Cir. 2000). Section 77p(d)(4), by contrast, is not within §1447(c) or equivalent to it, for a remand under §77p(d)(4) comes at the end rather than the outset of federal adjudication. The Supreme Court has itself reviewed remand decisions that fall outside the scope of §1447(c). *Quackenbush* and *Thermtron* are two; *Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988), is another. We must decide how this situation fits.

One possibility is that the district judge's use of the word "jurisdiction" is conclusive. We held in *Rubel* and *Phoenix Container* that a court may not look behind a jurisdictional remand to examine the reasons why the district judge thought jurisdiction lacking; plaintiffs say that the same principle applies here. Yet defendants do not want us to pierce an ultimate conclusion in order to get at the intermediate steps in the syllogism. Their point, rather, is that "jurisdiction" is a word of many shadings, and that judges sometimes use the word "jurisdiction" or the phrase "subject-matter jurisdiction" when they mean something else. Twice in the past few months the Supreme Court has observed that a court lacks "subject-matter jurisdiction" only when Congress has not authorized the federal judiciary to resolve the sort of issue presented by the case (or the Constitution forbids adjudication). See *Kontrick v. Ryan*, 124 S. Ct. 906, 914-16 (2004); *Scarborough v. Principi*, 124 S. Ct. 1856, 1864-65 (2004). There may be many other

reasons why a court should not resolve a dispute, but these differ from the lack of subject-matter jurisdiction.

In *Gravitt*, *Rubel*, *Adkins*, and *Phoenix Container* the district judges held that removal was improper; the litigation never should have come to federal court. That is not, however, what the district judge found here. Because plaintiffs represent more than 50 investors, this is a "covered class action" and a federal judge is not only authorized but also required to decide whether any court may entertain the litigation. A conclusion that a suit is not a "covered class action" (say, because just 40 investors stand to recover damages) would imply that removal had been improper, and such a decision would come within §1447(d).

Removal of this suit was proper, the district judge held; that is why the court proceeded to the question how §77p(b) affects the litigation. Only after making the substantive decision that Congress authorized it to make did the district court remand. After making the decision required by §77p(b), the district court had nothing else to do: dismissal and remand are the only options. Perhaps one could say that jurisdiction evaporated at that juncture, but that would be tautological. Once a court does all that the statute authorizes, there is no adjudicatory competence to do more. That is not the "lack of subject-matter jurisdiction" that authorizes a remand. Otherwise every federal suit, having been decided on the merits, would be dismissed "for lack of jurisdiction" because the court's job was finished. Cf. *Bell v. Hood*, 327 U.S. 678 (1946).

We must distinguish between a decision that "this court lacks adjudicatory competence" and a decision that "the court has been authorized to do X and having done so should bow out." The former implies lack of subject-matter jurisdiction, as *Kontrick* and *Scarborough* explain; the latter implies the presence of jurisdiction. A good example of the second category is a suit under federal law with a

state-law claim supported by the supplemental jurisdiction. 28 U.S.C. §1367. District courts should relinquish supplemental jurisdiction under certain circumstances, remanding to state court if the suit originated there. 28 U.S.C. §§ 1367(c), 1441(c). We know from *Carnegie-Mellon* that §1447(d) does not foreclose review of such a remand. In both *Carnegie-Mellon* and *Quackenbush* the district judge found the removal proper but concluded that the state court should handle some issues. In *Carnegie-Mellon* the remand reflected limits to the supplemental jurisdiction, and in *Quackenbush* the district judge concluded that abstention was appropriate so that the state judiciary could resolve points of state law. In both cases the Supreme Court reviewed the decision on the merits, treating a remand as unaffected by §1447(d) when the propriety of the removal was not in doubt.

This suit was properly removed. The district judge made a substantive decision under authority granted by a federal statute. It follows that the remand is unaffected by §1447(d). This makes practical sense too. The goal of that statute is that a contest about what forum should resolve the dispute be wrapped up quickly, so that the litigation can get under way. Appellate consideration of what amounts to a venue dispute slows things down to little good end, for the state court is competent to address the merits. SLUSA means, however, that one specific substantive decision in securities litigation must be made by the federal rather than the state judiciary. Appellate review of decisions under §77p(b) will promote accurate and consistent implementation of that statute, at little cost in delay beyond what the authorized removal itself creates. Yet if the remand is deemed non-appealable, then a major substantive issue in the case will escape review—for SLUSA ensures that only the federal judiciary makes the §77p(b) decision. Normal remands, for which §1447(d) is designed, leave all substantive issues open to plenary resolution in the state court

(and, if necessary, the Supreme Court of the United States). That's not how SLUSA works; it is now or never for appellate review of the question whether an action under state law is preempted. In the unusual securities class action where expedition is vital, we can accelerate the appeal's disposition. See *Abney v. United States*, 431 U.S. 651, 662 & n.8 (1977).

We recognize that two courts of appeals have held that disputes about the application of §77p and §78bb cannot be resolved by federal appellate judges. See *Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116 (2d Cir. 2003); *United Investors Life Insurance Co. v. Waddell & Reed, Inc.*, 360 F.3d 960 (9th Cir. 2004); *Abada v. Charles Schwab & Co.*, 300 F.3d 1112 (9th Cir. 2002). All of these decisions precede *Scarborough*, and although *United Investors* came a month after *Kontrick* the court did not discuss it. Both the second and the ninth circuits were mesmerized by the word "jurisdiction" and did not see the difference between a case that never should have been removed and a case properly removed and remanded only when the federal job is done.

Suits that the district court itself finds to have been properly removed are unaffected by §1447(d). That's the upshot of *Carnegie-Mellon* and *Quackenbush*. "[W]e understand *Carnegie-Mellon* to permit review when the district court believes that removal was proper and that later developments authorize remand*." In re Amoco Petroleum Additives Co.*, 964 F.2d 706, 708-09 (7th Cir. 1992). *Adkins* qualifies this statement with the observation that if the "later development" is one that demonstrates the impropriety of removal in the first place, then §1447(d) applies. 326 F.3d at 832-34. Here, however, later developments did not undercut the propriety of the removal; the only pertinent development is that the district court completed its appointed task. Thus the principle of *Amoco Petroleum*

*Additives* covers our situation. *Adkins* observes that this principle enjoys the support of the fourth, fifth, and eleventh circuits too.

Technically this opinion creates a conflict among the circuits about appellate review of decisions under SLUSA, so we have circulated it before release to all active judges under Circuit Rule 40(e). But our disposition reflects nothing more than application of settled circuit law to a different substantive statute. We could not follow the second and ninth circuits without overruling *Amoco Petroleum Additives* and later decisions in this circuit. Because *Amoco Petroleum Additives* has the support of at least three other circuits—not to mention *Things Remembered* and *Quackenbush*—overruling would be inappropriate. On the Rule 40(e) poll, none of the active judges favored a hearing en banc.

The appeal is within our appellate jurisdiction and will proceed to briefing and decision on the merits.

A true Copy:

       Teste:

                         _____

                         *Clerk of the United States Court of*
                              *Appeals for the Seventh Circuit*

USCA-02-C-0072—6-29-04